```
Priority  ✓
Send      ✓
Enter     ✓
Closed    ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___
```

**ORIGINAL**



FILED
CLERK, U.S DISTRICT COURT
NOV 26 2003
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).



ENTERED
CLERK, U.S. DISTRICT COURT
DEC - 1 2003
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 135, AFL-CIO; UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 324, AFL-CIO; UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 770, AFL-CIO; UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 1036, AFL-CIO; UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 1428, AFL-CIO; and UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 1442, AFL-CIO,<br><br>Petitioners,<br><br>v.<br><br>RALPHS GROCERY CO., a Delaware corporation; ALBERTSON'S, INC., a Delaware corporation; and SAFEWAY INC., a Delaware corporation, doing business as Vons, a Safeway Company, and as Pavilions,<br><br>Respondents. | NO. CV 03-7734 SJO (RZx)<br><br>NO. CV 03-7735 SJO (RZx)<br><br>**ORDER DENYING INJUNCTIVE RELIEF AND DISMISSING *DUSKIN, et al. v. RALPHS GROCERY CO., et al.*, CV 03-7735** |

FRED DUSKIN, an individual; PATRICIA GOMEZ, an individual; ARLEA HART, an individual; SHARON HECHLER, an individual; DIANE JOHNSON, an individual; CHRIS ROBERTS, an individual; MICHAEL ROSALES, an individual; MIKE ROSSITER, an individual; MIKE SEEL, an individual;

```
 1 | CATHERINE SCHAFER, an individual;   )
   | and LINDA SPEER, an individual,     )
 2 |                                     )
   |                  Plaintiffs,        )
 3 |                                     )
   |         v.                          )
 4 |                                     )
   | RALPHS GROCERY CO., a Delaware      )
 5 | corporation; ALBERTSON'S INC., a    )
   | Delaware corporation; and SAFEWAY   )
 6 | INC., a Delaware corporation, doing )
   | business as Vons, a Safeway Company,)
 7 | and as Pavilions,                   )
   |                                     )
 8 |                  Defendants.        )
   |                                     )
 9
```

There are two separately filed cases now before the Court, *United Food and Commercial Workers Union, Local 135, AFL-CIO, et al. v. Ralphs Grocery Co., et al.*, CV 03-7734 SJO (RZx), and *Fred Duskin, et al. v. Ralphs Grocery Co., et al*, CV 03-7735 SJO (RZx). Both cases were filed on October 29, 2003 and stem from the same labor dispute.

After reviewing the Petition in *United Food and Commercial Workers Union, Local 135, AFL-CIO, et al. v. Ralphs Grocery Co., et al.*, CV 03-7734 SJO (RZx) (hereinafter "*UFCWU, Local 135*") the Court found it appropriate to ask for additional briefing and set a hearing date. The Court ordered Petitioners to show cause as to why temporary injunctive relief should issue. (Order of November 10, 2003)[1] The matter was scheduled for hearing, and a hearing was held at 10:00 a.m. on Friday, November 21, 2003. (*Id.*)

*Fred Duskin, et al. v. Ralphs Grocery Co., et al*, CV 03-7735 SJO (RZx) (hereinafter "*Duskin*") was then transferred to this Court pursuant to General Order 224. (Order of November 14, 2003). Before it was transferred to this Court, Plaintiffs filed an *Ex Parte* Application for an expedited hearing regarding the availability of injunctive relief. Because *Duskin* involves many of the same issues, the Court decided to set it for hearing on the same date and time as *UFCWU, Local 135*. (Order of November 13, 2003) The Court also set an Order to Show

---

[1] On the same day that the Court issued its Order, Petitioners in *UFCWU, Local 135* filed an *Ex Parte* Application for Order Shortening Time to hear the instant matter. Because the Court already set the matter for hearing, Petitioners' Application was moot when filed.

2

Cause as to why Case Nos. CV 03-7734 SJO (RZx) and CV 03-7735 SJO (RZx) should not be consolidated for all matters, including trial. (*Id.*)

I.  BACKGROUND

The employees of Vons, a supermarket chain run by Safeway, began a strike against that employer on October 11, 2003. (*UFCWU, Local 135* Petition at ¶ 18) Thereafter, Albertson's and Ralphs locked-out their union employees. (*Id.*) The employees contend they remain eligible for benefits described in a Collective Bargaining Agreement ("CBA" or "Agreement") that expired on October 5, 2003. (*Id.* at ¶¶ 18 and 13)

A.  The Petition in *UFCWU, Local 135*, CV 03-7734 SJO (RZx)

Petitioners in *UFCWU, Local 135* commenced CV 03-7734 SJO (RZx) by filing a Petition to Compel Arbitration and for Injunctive Relief ("Petition"). Ralphs Grocery Co. ("Ralphs"), Albertson's, Inc., ("Albertson's") and Safeway Inc. ("Safeway") are named as Respondents. In the related case, *Duskin*, CV 03-7735 SJO (RZx), the same entities are named as Defendants. The named Plaintiffs in *Duskin* are employees of Albertson's, Vons and Ralphs.

According to the union, Article 15 of the CBA "provides for maintenance of the program of medical, hospital, dental, orthodontic, prescription, mental health, vision care, hearing aids, orthopedic appliances and preventive medicine benefits which the United Food and Commercial Workers Unions and Food Employers Benefit Fund (hereinafter, the "benefit fund") provides to UFCW-represented employees and their eligible defendants." (*Id.* at ¶ 14) In the *UFCWU, Local 135* Petition, Petitioners aver the "Benefit Fund is a Taft-Hartley plan, established pursuant to Section 302(c)(5) of the [Labor Management Relations Act, 29 U.S.C. § 186(c)(5).]" (*Id.* at ¶ 15) The union claims, *inter alia,* that employees "who have worked the minimum required number of hours in the months of June, 2003 and July, 2003 in positions covered by the 1999 CBA have earned the right to benefits coverage for themselves and their dependents for the months of October, November and December, 2003." (*Id.* at ¶ 16) Similarly, Petitioners allege, *inter alia*, "employees of Albertson's, Ralphs and Vons represented by the Unions who have worked the applicable minimum number of hours in the months of September, 2003 and October, 2003, will earn the right to benefits for the months of January, February and March, 2004." (*Id.* at ¶ 17) The

Petition also makes it clear that other rights and options are at stake in the instant litigation. (*Id.* at ¶ 17 ll.18-28) For example, the union claims that employees who would otherwise be eligible but who have not worked the applicable number of hours in September and October have the right to maintain benefits coverage by exercising an option to pay.

Petitioners contend that the "strike and lockout have brought about a drastic reduction in the amount of contributions received by the Benefit Fund without ... bringing about any commensurate reduction in the Benefit Fund's continuing obligations to pay for benefit claims incurred" before the strike and lock-out. (*Id.* at ¶ 19) The union is concerned that the benefit fund will find it impossible to provide benefit coverage for employees for October, 2003 and thereafter. According to the Petition, Respondents have failed to make obligatory contributions to the benefit fund in violation of Article 15 of the CBA. (*See* id. at pp.5-6)

Petitioners aver they will suffer irreparable harm if the employers are not ordered to make the contributions necessary to pay for vested benefits. (*Id.* at ¶ 27) Petitioners therefore pray: (1) that this Court order arbitration, on an expedited basis, of the issues described, *supra;* and (2) that the Court issue interim injunctive relief enjoining the market employers from refusing to pay contributions necessary to provide coverage under the benefit plan.

B.   The Complaint in *Duskin*, CV 03-7735 SJO (RZx)

Many of the same claims and issues are raised in the *Duskin* Complaint as in the *UFCWU, Local 135* Petition. In *Duskin,* there are also two causes of action: (1) Declaratory and Injunctive Relief; and (2) Preliminary Injunctive Relief. (*Duskin* Compl. at pp. 3 & 7) As in *UFCWU, Local 135*, Plaintiffs in *Duskin* also claim that Article 15 of the 1999 CBA provides for maintenance of various medical benefits. (*Id.* at ¶ 18) According to the Complaint, employees "who have worked a minimum of hours in the months of June, 2003 and July, 2003 in positions covered by the [CBA] have earned the right to benefits coverage for themselves and their dependents for the months of October, November and December, 2003." (*Id.* at ¶ 21) Plaintiffs claim that the minimum number of hours is 64 hours per month for Clerk's Helpers, 76 hours per month for Meat Cutters, and 92 hours per month for all other employees. (*Id.*)

4

The major difference between the *Duskin* Complaint and the *UFCWU, Local 135* Petition is that Plaintiffs in *Duskin* claim they are entitled to relief pursuant to section 601 of ERISA, 29 U.S.C. § 1161, commonly known as "COBRA." (*Id.* at ¶ 23) Petitioners state that the lock-out and strike are qualifying events within the meaning of section 603 of ERISA, 29. U.S.C. § 1163. (*Id.*) According to the Complaint, the benefit plan provides employees will receive COBRA coverage for November, 2003 and December, 2003 automatically, without the need to make a formal election to receive COBRA benefits or the need to pay any COBRA premium for these two months of coverage. (*Id.* at ¶ 24) Employees are purportedly able to make a separate election for benefits that would be available after January 1, 2004 and to order the market employers to make contributions to the plan in the amount of $36,000,000 by a date in December of this year. (*Id.*)

The alleged immediate harm stems from a reduction in the amount of contributions received by the benefit fund. (*Id.* at ¶ 26) According to the Complaint, the benefit fund pays approximately $45,000,000 in benefits claims every month but only has $31,000,000 in reserves. (*Id.*) Plaintiffs argue that Defendants are obligated, pursuant to § 601 of ERISA, to provide the funding necessary for the benefit fund to extend the continuation of benefits required by COBRA. (*Id.* at ¶ 29) Accordingly, Plaintiffs are seeking a Court order to compel Defendants to make the contributions necessary to provide for continuing coverage under the benefit plan for employees who are entitled to benefits through the month of December. (*Id.* at p. 8, ll.19-24) Plaintiffs also ask the Court to "issue interim injunctive relief enjoining [Defendants] from refusing to pay the contributions necessary to provide for continuing coverage under the Plan of Benefits" for the months of November and December. (*Id.* at pp. 8-9)

II. MOTIONS REQUESTING INJUNCTIVE RELIEF

The motions filed in *UFCWU, Local 135* and *Duskin* request injunctive relief on two separate issues. The unions move to compel expedited arbitration. In *Duskin*, Plaintiffs request that the Court order Defendants to make contributions to the benefit fund that are necessary to provide benefit coverage for November and December 2003.

### A. *UFCWU, Local 135*, Motion to Compel Arbitration

Petitioners claim this Court has jurisdiction to hear the instant matter pursuant to section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. 185(a), and 28 U.S.C. § 1337. (First Amended Petition at ¶ 2) In its motion to compel arbitration, Petitioners argue that employees have a vested right to continuing benefits coverage; and that the coverage cannot be taken way from them "whether the Agreement continues in effect or expires or whether they choose to continue working for their employer or go on strike." (*UFCWU, Local 135*, P.&A., p.1) Petitioners claim that the unions demanded Respondents make the necessary contributions, but that Respondents failed to do so. (*Id.* at p.2 ll.14-16) According to Petitioners, the failure of Respondents to make the contributions amounts to a breach of the CBA. As a result, Petitioners have moved for this Court to compel arbitration and suggest that arbitration begin no later than December 4, 2003. (*UFCWU, Local 135*, P.&A., p.5). Petitioners would like an arbitrator to be selected or appointed by November 24, 2003.

In its consolidated opposition to the *UFCWU, Local 135* motion, Respondents contend they have never refused to arbitrate and that, to the contrary, they are willing to arbitrate the grievance expeditiously. (*UFCWU, Local 135*, Opp'n. at p.2). They also argue: (1) that the trustees of the union are actually responsible for providing benefits for eligible employees under the CBA; (2) that Petitioners fail to aver the employers have breached any obligation to pay into the benefit fund; and (3) that the Norris-LaGuardia Act bars this Court from issuing an injunction in this dispute. (*Id.* at pp.1-2) Finally, Respondents contend (4) that the law and facts do not compel the issuance of a preliminary injunction. (*Id.* at p.2)

### B. *Duskin*, Motion to Compel Contributions

Plaintiffs in *Duskin* request an order compelling Defendants to make contributions to the health benefit plan. The gist of its argument is that injunctive relief is appropriate because the employees have a right to COBRA benefits for November and December, 2003, based on ERISA and provisions of the benefit plan agreed to by the employers. (*Duskin* P.&A., p.3) Plaintiffs claim that they would suffer severe and irreparable harm if their benefits are allowed to lapse due to inadequate funding of the benefit plan. (*Id.*)

1  As in *UFCWU, Local 135*, in its consolidated opposition, Defendants raise several
2  questions as to whether Plaintiffs can bring this action. First, Defendants argue that the Norris-
3  LaGuardia Act Prohibits issuance of injunctions in a labor dispute. (*Duskin* Opp'n. at p.4)
4  Second, they argue that Plaintiffs have no standing under ERISA to move for an injunction
5  because, according to Defendants, Plaintiffs are precluded from suing contributing employers for
6  benefits from an ERISA plan. Rather, Defendants argue, ERISA only permits suits to recover
7  benefits against the benefit plan as an entity, and suits for breach fo fiduciary duty only against
8  the fiduciary. (*Duskin* Opp'n. at p.7) Defendants cite *Madden v. ITT Long Term Disability Plan*,
9  914 F.2d 1279, 1287 (9th Cir. 1990) *and Taft v. Equitable Life Assur. Soc.* 9. F.3d 1469 (9th Cir.
10 1993) for support.

11 Further, Defendants also argue that the instant action is barred by the traditional distinction
12 between courts of law and equity. (*Duskin* Opp'n. at p.8) Defendants cite *Great-West Life &*
13 *Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) for the principle that a suit seeking to compel
14 payment of a sum of money is a suit for "money damages." As a result, Defendants argue, it
15 would be inappropriate for the Court to allow equitable relief when the instant case is really an
16 action at law for money damages. (*Duskin* Opp'n. at pp.8-9). To support this argument,
17 Defendants also cite *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) and *Leung v. Skidmore,*
18 *Owings & Merrill*, 213 F.Supp.2d 1097 (N.D. Cal. 2002). (*Duskin* Opp'n. at p.9).

19 Finally, Defendants contend that Plaintiffs cannot show a likelihood of success on the
20 merits because: (1) they do not have vested benefits under the plan (*Id.*); (2) according to the
21 CBA, benefit plan, and trust agreement, no special contributions or payments are owed (*Id.* at
22 p.10); (3) the employees are not entitled to benefit coverage after November 30, 2003; (4) they
23 also are not entitled to "self pay" coverage; and (5) Plaintiffs fail to demonstrate that the benefit
24 fund will be unable to provide COBRA coverage. (*Id.*)

25 III.  LEGAL STANDARD

26 A party seeking preliminary injunctive relief must meet one of two tests: "either a likelihood
27 of success on the merits and the possibility of irreparable injury, or that serious questions going
28 to the merits were raised and the balance of hardships tips sharply in its favor." *Immigrant*

*Assistance Project of the Los Angeles County Federation of Labor v. Immigration and Naturalization Service,* 306 F.3d 842, 873 (9th Cir. 2002). The Ninth Circuit explained that "these two alternatives represent 'extremes of a single continuum,' rather than two separate tests." *Id.* (*citing Sun Microsystems, Inc. v. Microsoft Crop.,* 188 F.3d 1115, 1119 (9th Cir. 1999)). The greater the relative hardship to the moving party, the less it has to show the probability of success. *Id.* However, even if the balance of hardships tips decidedly in favor of a party moving for preliminary injunction, it must be shown as an irreducible minimum that there is a fair chance of success on the merits. *Id.; see also Stanley v. University of Southern California,* 13 F.3d 1313, 1319 (9th Cir. 1994) (*quoting Martin v. International Olympic Committee,* 740 F.2d 670, 674-75 (9th Cir. 1984). On the other end of the continuum, a preliminary injunction may also be granted even though the harm factor favors the defendant, provided that there is a strong likelihood of success on the merits. *Id.; see also Immigrant Assistance Project of the Los Angeles County Federation of Labor, supra,* 306 F.3d at 873.

There is also a distinction to be made between a mandatory preliminary injunction and a prohibitory preliminary injunction. *See Stanley, supra,* 13 F.3d at 1319-20. A prohibitory injunction preserves the status quo. *Id.* at 1320 (*citing Johnson v. Kay,* 860 F.2d 529, 541 (2d Cir. 1988)). Whereas, a mandatory injunction "goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored." *Id.* (*quoting Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir. 1979)). Accordingly, when the Court is considering a request for mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite,* the Ninth Circuit instructs that "courts should be extremely cautious about issuing a preliminary injunction." *Martin, supra,* 740 F.2d at 675. In *Duskin,* Defendants insist that an order compelling additional payments into the benefit fund would amount to mandatory relief, and they argue that such extraordinary relief is unwarranted. (*Duskin* Opp'n. at p.7)

Finally, before the Court can even consider the issuance of an injunction, Plaintiffs must show (1) that this Court has jurisdiction to intervene in the instant controversy and (2) that Plaintiffs have standing to sue.

## IV. DISCUSSION

In both cases, the alleged immediate and irreparable harm is the same – the benefit fund may not have adequate resources to pay for the employees' medical benefits. (*Compare UFCWU, Local 135 P.&A.* at pp.2-3; *and Duskin P.&A.* at p.7). According to Petitioners and Plaintiffs, the benefit fund would normally receive roughly $45,000,000 in contributions in October, but will likely only receive $21,000,000. (*Duskin* P.&A. at p.7; *citing* Abrams Decl. at ¶ 14). According to the Complaint filed in *Duskin,* the benefit fund pays approximately $45,000,000 in benefits claims every month but only has $31,000,000 in reserves. (*Duskin* Compl. at ¶ 26). These numbers indicate that the benefit fund is adequately funded for the month of November but will experience a shortfall in December. (*See* Abrams Decl. at ¶ 14).

Defendants contend that the benefit fund may remain adequately funded through the end of December 31, 2003. (Crews Decl. at ¶ 7) According to Defendants' actuarial consultant, the benefit fund is mostly financed by employer contributions that are based on the number of hours worked by employees. (*See* id. at p.2) The same consultant claims that "it is possible that the Benefit Fund could continue to operate and provide health care benefits beyond December 31, 2003, depending on: (a) what employer contribution rates are set by the trustees, (b) what self-pay rates for participants are set by the trustees, (c) what COBRA rate adjustments, if any, are made to reflect the plans' actual expected cost, (d) when the labor dispute ends, (e) when eligibility ends under the plan for the striking and locked out workers, ... (g) when, if ever, health care providers, including HMOs will refuse to render services because of late payment by the Fund," and any possible successor agreements. (*Id.* at p.3) Defendants also point out that the benefit fund has a companion ancillary fund with assets of approximately $39 million, most of which could be transferred to the benefit fund to make up for any shortfall. (*Id.* at p.4)

The Court recognizes that there is a risk of harm and irreparable injury. Attached to the *Duskin* motion are the declarations of several employees, each describing in compelling terms his or her dependency on continued benefits to sustain life saving treatment for themselves or family members. (*See e.g.* Decl's. of Abrams, Androwsky, Chapman, Munoz and the other declarants.) The hardships experienced by the employees undoubtedly outweigh the financial burden on

Defendants if there was a real danger of insolvency for the benefit fund. But in light of the points made in the Crews Declaration, (a) it is unclear whether the benefit fund will run out of money, and (b) there is no showing made by the moving parties that indicates health service providers will immediately refuse benefits to employees otherwise covered under the benefit fund. But before the Court reaches any conclusion on the merits of the instant case, several questions must be answered, namely: (1) whether the Court is legally able to fashion any relief in light of, *inter alia*, the Norris-LaGuardia Act; and (2) whether the union and employees have standing.

### A. *UFCWU, Local 135*, Motion to Compel Arbitration

Petitioners claim they are entitled to relief pursuant to statute and the CBA. The CBA expired on October 5, 2003. (*UFCWU, Local 135* Petition, Exh. A., p.1). Article 12 of the Agreement governs "[a]ny and all matters of controversy, dispute or disagreement of any kind or character existing between the parties and arising out of or in any way involving the interpretation or application of the terms of this Agreement, except as may be otherwise provided in Section D" of Article 12. (*Id.* at p.45). Subsection B(2) of Article 12 provides a procedure to settle a grievance without arbitration: "upon written receipt of a written notice setting forth the exact nature of the grievance from either party, the representatives of the Employer and the representatives of the Union may meet within a calendar week and attempt to settle ... the matter." (*Id.*) The employers received written notice of the employees' grievances before the instant suit was filed. (*See e.g.* Ryan Decl. Exh. A; Paller Decl., Exh. 1; *and* Conger Decl., Exh. 1) The parties discussed the possibility of arbitration but have been unable to select an arbitrator or otherwise commence arbitration proceedings. (Ryan Decl. at ¶¶ 6-11).

The Agreement also provides that "[a]ny matter not satisfactorily settled or resolved in Section B hereinabove shall be submitted to arbitration for final determination upon written demand of either party. The written demand for arbitration may be made at any time after the expiration of fifteen (15) days but not later than sixty (60) days from the date of the notice." (*UFCWU, Local 135* Petition, Exh. A. at p.45). Article 12 of the CBA further specifies that "[a] mediated resolution of a grievance and/or arbitrator's decision under this mediation/arbitration process shall be final and binding on all of the parties to such grievance." (*Id.* at p.46) Subsection

D of Article 12 sets out the following limitations: "The arbitrator shall not have the authority to decide questions involving any Local..., nor shall the arbitrator have the authority to effect a change in, modify, or amend any of the provisions of this Agreement, or to make decision on provisions covering wages or working conditions to be incorporated either in a new agreement or any subsequent annual agreement." (*Id.* at p.48, *emphasis added*.)

### i. The Norris-LaGuardia Act, 29 U.S.C. §§ 101, *et seq.*

The principal objection raised by Respondents is that the Norris-LaGuardia Act bars this Court from issuing an injunction in this dispute. (*UFCWU, Local 135* Opp'n. at p.4; *and Duskin* Opp'n. at p.4) The Norris-LaGuardia Act, 29 U.S.C. § 101 states: "No court of the United States, as herein defined, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this Act [29 USCS §§ 101, *et seq.*]; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this Act [29 USCS §§ 101, *et seq.*]. The over-all policy of Norris-LaGuardia Act [29 USCS §§ 101-115] is to encourage use of nonjudicial processes of negotiation, mediation and arbitration for adjustment of labor disputes; its prime purpose is to restrict federal equity power in labor controversies within greatly narrower limits than it had come to occupy and to make an injunction the last line of defense, available not only after other legally required methods, but after all reasonable methods, have been tried and found wanting." *Brotherhood of R. Trainmen v. Toledo, P. & W. Railroad*, 321 U.S. 50, 58-59 (1944). The Norris-LaGuardia Act was originally passed to restore the effect of the Clayton Act and prevent employers from obtaining equitable relief in labor disputes from the federal courts. *See e.g. United States v. Hutcheson* 312 U.S. 219 (1941); and *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 253-54 (1970).

Respondents argue that, pursuant to the Norris-LaGuardia Act, this Court does not have jurisdiction to compel expedited arbitration and that the parties must resort to the arbitration procedure described in the CBA. (*UFCWU, Local 135* Opp'n. at p.4). They cite *Steelworks v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584 (1960) and *Detroit Newspaper Publishers' Ass'n v. Detroit Typographical Union, Local 18*, 471 F.2d 872, 875 (6th Cir. 1972) for support. (*UFCWU,*

*Local 135* Opp'n. at p.5). The employer Respondents recognize that there is an exception to the Norris-LaGuardia Act where one party seeks to compel arbitration of a labor dispute. (*Id.*). But they contend the exception only applies to situations where there is a strike "over a grievance which both parties are contractually bound to arbitrate." *Id.* at p.5. Respondents cite *Boys Markets, Inc. v. Retail Clerks Local 770,* 398 U.S. 235 (1970) to support their contention that the exception does not apply in the instant case.

In its First Amended Petition, the unions claim this Court has jurisdiction pursuant to section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. 185(a) and 28 U.S.C. § 1337. (First Amended Petition at p.1). Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. 185(a).

The case cited by Respondents, *Boys Markets, supra,* 398 U.S. at 250, stands for the proposition that a federal district court can compel arbitration when one party refuses to abide by an arbitration clause in a CBA. In *Boys Markets,* the Supreme Court announced that there is a balance to be struck between the Norris-LaGuardia Act and the LMRA, 29 U.S.C. 185(a). *Boys Markets,* 398 U.S. at 249-50. In *Boys Markets,* that balance was reached by compelling arbitration.

However, this Court is faced with a different set of facts and it is apparent that the exception announced by the Supreme Court in *Boys Markets* does not apply in the instant case. In *Boys Markets*, the CBA had not yet expired and it otherwise clearly governed the dispute at issue. *See* id. at 238-39. The CBA in *Boys Markets* contained a similar clause as the Agreement in the instant case – that all controversies concerning interpretation or application of the CBA should be resolved by adjustment and arbitration procedures set forth therein and that, during the life of the contract, there should be "no cessation or stoppage of work, lock-out, picketing or boycotts." *Id.* In *Boys Market,* the union filed a grievance, and when its grievance was not heeded by the employer, the union decided to go on strike. *Id.* The Court ordered the parties into arbitration because both parties had promised to settle its disputes through arbitration. *See* id.

One of the questions left unanswered in *Boys Markets* is whether a court can order parties into arbitration when the CBA has expired.

The question of whether it is appropriate to enforce an arbitration clause after the expiration of a CBA is not a matter of first impression. *See e.g. Litton Financial Printing Div. of Litton Business Systems, Inc.* (1991); *and Local Joint Executive Bd. of Las Vegas, Culinary Workers Union, Local 226 v. Royal Center, Inc.*, 796 F.2d 1159 (9th Cir. 1986). Most courts considering the issue have decided to refer labor disputes to arbitration even if the CBA has expired. *See* id. However, some courts have elected to go the other way. *See e.g. Seafarers Intern. Union v. National Marine Services, Inc.*, 639 F.Supp 1283 (E.D.La. 1986).

In *Litton Fin. Printing Div., supra,* 501 U.S. 190, 193 (1991), the Supreme Court held that there is "no obligation to arbitrate a labor dispute arising solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so." *Id.* In *Litton Fin. Printing,* the Supreme Court affirmed the principle that "NLRA arbitration is a matter of consent, and that it will not be imposed upon parties beyond the scope of their agreement." *Id.* Accordingly, "In the absence of a binding method for resolution of post-expiration disputes, a party may be relegated to filing unfair labor practice charges with the Board if it believes that its counterpart has implemented a unilateral change in violation of the NLRA. If, as the Union urges, parties who favor labor arbitration during the term of a contract also desire it to resolve postexpiration disputes, the parties can consent to that arrangement by explicit agreement." *Id.* In the instant case, the parties did not consent to arbitration after the expiration of the CBA.

That would apparently mean that Petitioners are powerless to compel arbitration. However, in the same case, *Litton Financial Printing, supra,* 501 U.S. at 196-97, the Supreme Court stated that a "postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." In the instant case, according to the pleadings, it is clear that the purported right to continued benefits arises, at least in part, under Article 15 of the CBA. That right may have

vested during the term of the contract. The parties are in disagreement over whether it has vested or not. But there is no need for the Court to reach that issue because neither side has actually refused arbitration.

In its moving papers, Petitioners argue that "Employers may not refuse to submit these grievances to arbitration." (*UFCWU, Local 135* Opp'n. at p.6). The employers, however, have not yet refused to submit to arbitration. Accordingly, there might not even be a controversy for this Court to adjudicate. The parties appear to be selecting an arbitrator pursuant to the mechanism outlined in Article 12 of the CBA. (*See* Ryan Decl. at ¶¶ 8-12; *and UFCWU, Local 135* Petition, Exh. A. at p. 47). If the inability to come to an agreement on an arbitrator is construed as refusal to arbitrate, then it would appear both sides are equally to blame. (*See* id.) Unless and until they refuse arbitration, it would be inappropriate to issue an order compelling arbitration. *See Boys Markets, supra*, 398 U.S. at 250. Accordingly, Petitioners' Motion to Compel Arbitration is hereby moved OFF CALENDAR.

ii.  Post Hearing Agreement to Arbitrate

At the hearing, the Court encouraged the parties to come together and select an arbitrator to resolve this dispute.[2] The parties were able to meet and confer off the record. They stipulated to the selection of Mr. Tom Roberts as arbitrator. The Court approved the stipulation and ordered the appointment of Mr. Roberts as arbitrator.

---

[2] The *Steelworkers Trilogy* of cases emphasized the role of the arbitrator as a force for industrial peace, and articulated a view of the labor contract as a working arrangement between labor management including unwritten understandings and practices not reflected in written terms. *See United Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574 (1960); *and United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960). In the *Steelworkers Trilogy*, the Supreme Court announced a doctrine of self-restraint in cases where the parties have assigned the task of dispute resolution to an arbitrator privately selected. In light of the *Steelworkers Trilogy*, the instant matter is probably best left to the arbitration process described in the CBA even though the Agreement has expired. In *United Steelworkers v. American Mfg. Co., supra*, 363 U.S. at 568, the Supreme Court stated that "[t]he courts, ...have no business weighing the merits of the grievance, ... considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim."

B. *Duskin*, Motion for Injunctive Relief

In light of the facts and legal issues discussed in *UFCWU, Local 135, supra,* it appears that, one way or another, the instant controversy over the benefit fund will probably be resolved in arbitration, *supra*. The remaining question is whether Petitioners are entitled to an order compelling contributions to the benefit fund to insure the solvency of the fund while the parties resolve their differences in arbitration. In light of the analysis in *UFCWU, Local 135,* the quick answer would appear to be that the instant dispute should be referred, in its entirety, to an arbitrator. However, the analysis of the Norris-LaGuardia Act and jurisdictional issues presented in *Duskin* are slightly different than those presented in *UFCWU, Local 135*. Plaintiffs purport to bring the *Duskin* action to enforce the Defendants' obligation to fund federal COBRA benefits. (*Duskin* P.&A. at p.3).

    i. Jurisdiction

Federal Courts have exclusive jurisdiction over ERISA claims pursuant to § 502(e)(1), 29 U.S.C. § 1132. So long as this case is characterized as a dispute for benefits or breach of fiduciary duties related to an employee benefit plan, this Court has jurisdiction. *See e.g. Framingham Union Hosp., Inc. v. Travelers Ins.,* Co., 721 F.Supp. 1478 (D. Mass. 1989).

    ii. Standing

If the employees have standing to sue, the employers must be a fiduciary. *Madden v. ITT,* 914 F.2d 1279, 1287 (9th Cir. 1990) (*citing Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324-25 (9th Cir. 1985)). Congress granted employees standing to sue their benefit fund under ERISA § 502, 29 USCS § 1132. The statute states a civil action may be brought:

(1) by a participant or beneficiary-- ...
**(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;**
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409 [29 USCS § 1109];
**(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan;**
(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 105(c) [29 USCS § 1025(c)].

29 USCS § 1132.

Section 3(21)(A) defines a person as a fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). As a result, an employer who maintains his own plan qualifies as fiduciary. *Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.*, 48 F.3d 365 (8th Cir. 1995). In the instant case, there is no indication that the employers are maintaining their own plans.

The Ninth Circuit rejects suits against non-fiduciaries. *Nieto v. Ecker,* 845 F.2d 868, 871 (9th Cir. 1988). The Ninth Circuit has held that "the only causes of action [a plaintiff] has are those provided by ERISA. ERISA permits suits to recover benefits only against the Plan as an entity, . . . and suits for breach of fiduciary duty only against the fiduciary." *Madden v. ITT*, 914 F.2d 1279, 1287 (9th Cir. 1990) (*citing Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324-25 (9th Cir. 1985)). The reason for this rule is clear. Trustees are in the best position to manage a benefit fund. ERISA merely codifies common-law trust law. *See* id. Accordingly, it is the trustees, not the beneficiaries, who are empowered to sue the parties obligated to contribute to the trust fund. In the instant case, the beneficiary employees have seemingly circumvented the trust and the trustees to bring an impermissible suit against employer contributors.

In some instances an action may be brought against non-fiduciaries for breach of fiduciary obligation. *Blue Cross and Blue Shield of Alabama v. Weitz*, 91 F.2d 1544; *and Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000). But there has to be some showing of conspiracy or knowing participation with the fiduciary in breaking a fiduciary obligation. *Harris Trust, supra,* 530 U.S. 244-45. However, there is no allegation of conspiracy in the instant case. There is also no clear showing of a breach of fiduciary responsibility. Plaintiffs' Motion for Injunctive Relief is therefore DENIED.

/ / /

/ / /

/ / /

/ / /

/ / /

V.   RULING

Mr. Tom Roberts was selected as arbitrator over the dispute described in *UFCWU, Local 135,* Case No. CV 03-7734 SJO (RZx).  Petitioners' Motion to Compel Arbitration is therefore moved OFF CALENDAR.  The parties are ORDERED to arbitrate the dispute before Mr. Roberts.

Plaintiffs' Motion for Preliminary Injunction in *Duskin,* Case No. CV 03-7735 SJO (RZx) is hereby DENIED.  Accordingly, *Duskin, Case* No. CV 03-7735 SJO (RZx) is hereby DISMISSED.

**IT IS SO ORDERED.**

Dated this ___ day of November, 2003.

S. JAMES OTERO
UNITED STATES DISTRICT JUDGE